We're going to wait for the crowd to move out of the room, so just give us a few minutes. But the district court may have been too quick to say that one's life job is not constitutionally protected. But what was at stake here was not his job, but being on leave without pay, and that's a little bit different. And it's not clear to me that that raises up to a constitutional issue. But my other question is even more serious. Did your client ever tell the fire department that he couldn't take the test, that he was allergic to the test and couldn't take it? I've looked and looked and looked. He could have, but he never did. He never told them that that was a problem, and that for me is telling, you know, you've got a very attractive client, but why did he just go and do the thing without telling them I've been told that I can't take the test? Your Honor, that's a disputed fact, and it is in the record at A57 in the statement of material facts that the defendants submitted. They admitted that the BHS records reflect that his allergist told him he couldn't take, he couldn't get an allergy test. But beyond that... But did he seek an exemption from the second dose as a result of that? He formally filed for an exemption? There was no formal process after the October 27th deadline, and Mr. Pastrana was injured on October 29th. So he didn't need an exemption. He didn't realize he needed one until he got severe anaphylaxis. Wait. The first – I'm talking about the second dose. So the first dose he took was on October 29th, which was after the deadline to apply for medical accommodation. Okay. But the second dose? Yes. So from the second dose, he repeatedly told BHS, which were the ones that decided medical exemptions, that he needed accommodation from the second dose. Well, there's a difference between telling the person you believe to be involved in the decision and seeking an exemption. The city says in their briefing that, in fact, people did seek exemptions on basis of allergy, and those were granted in some cases. So one of their arguments is that there was never a formal exemption request made. I would love to speak to that, Judge, because this is a new argument on appeal. Below, the city argued that he did seek an accommodation, and they were engaged in the cooperative dialogue process, and that his failure to submit the test constituted a failure to complete the cooperative dialogue process. On appeal, for the first time, they now try to switch the facts. And those facts are not supported on the record. We have an uncontroverted affidavit from Mr. Pastrana saying he asked for accommodation, and they told him he couldn't get it. Now, they never said you – It's unconverted that he asked – that he told the doctor that he didn't want to take the second dose, right? But it's a dispute as to whether that was actually a request for an exemption. Under the accommodation statutes, first of all, there's no magic word to it. We're not under the accommodation statutes, right? Right. We're under the Constitution here. Right. And so this is a substantive due process claim, right? We are not in the ADA, and we're not in the Rehabilitation Act, right? I agree, Your Honor. All right. So – but to the extent it's relevant, then, whether he did a formal application or not – I'll go back to Jacobson. When Jacobson said it was unconstitutional and, in fact, cruel and inhuman in the last degree to require someone to take a vaccine when you knew that they were at reasonable risk of harm, they never said they have to have filled out the proper – So that's fair. So your position would be if they knew that he was at risk of harm and was being forced to accept a medical intervention that would harm him, you wouldn't need to show that he submitted a formal request or not, right? But I think the city's point would be we didn't know he was going to do that because we didn't – we never denied the request. It never really got to us because he never made that request, right? I do agree that if the city wasn't aware that he was going to take the second dose or that they were effectively denying him the exemption, that he wouldn't be able to say the claim, right? If they didn't know at all, sure. But the firefighters are under the care of BHS, and that is the entity under – that the FDNY – You're saying that the doctors should have – But didn't he go and take the second dose before telling the city? There was still time. No. He just did it on his own. No, Your Honor. That's not in the factual record. It's a new allegation on appeal, and it's nowhere supported. Mr. Pastrana repeatedly told BHS he needed accommodation and he was scared. And their own medical records – and the record below is filled with this. Their medical records from October on document that he had a severe anaphylaxis to the first dose. Is this a correct recitation of the fact he had a severe reaction to the first dose? He told the fire department doctor, I've had a reaction. I don't want to take the second dose. The doctor says you need to do an allergy test to get an exemption. He sees his private allergist. The allergist says you can't get a reliable allergy test as long as you're on prednisone. And then after that, he goes ahead and he gets the second dose because he thinks that he can't get an exemption. Is that right? He does think he can't, but he did inform the doctor, and that's in their own FDNY medical records. He informed who? The BHS doctor in their own medical records. Between the time that the doctor said you can't get a reliable allergy test and the time that he took the second dose? Yes, Your Honor. At A57 in the statement of material facts at paragraph 17, Dr. Olender's BHS examination notes note, first allergist stated not eligible for skin testing. They knew also that he wasn't because he was on prednisone, and they knew that he was on prednisone. You can't take an allergy test when you're on prednisone because it suppresses the symptoms. Moreover, the CDC's contraindication list says nothing about a test. He fell squarely within the conditions that the CDC said were complete contraindications. Now, is your argument that the fire department, because it knew he was on prednisone, couldn't ask him to do an allergy test? Because, you know, you can expect fire departments to know many things, but should they know difficult medical questions as to whether you can take an allergy test when you're on prednisone or not? I didn't know it until I read that case, this case. I would argue yes, and creating a test like that, as applied to Mr. Pastrana, it shows why it is arbitrary and cruel. And we are talking about the Constitution here. It seems like it would be arbitrary. I mean, like, so the city says that we, in fact, did grant, like, there's, you know, the affidavit in the record that says the city did, in fact, grant medical exemptions to some people who had adverse medical reactions, that it did not require a skin test for at least some of those people, right? So you don't disagree with that, do you? I want to point out that that is a sole line in a declaration that doesn't say that allergy tests were not required. It says, and it could have, if they wanted to say that there was no allergy test requirement, they could have. But they weren't arguing that below. Below, they specifically said there was an allergy test requirement. That declaration says a skin test wasn't required for a few people. Our request for an exemption from the order that were granted based on the allergens of the COVID-19 vaccine are a component of the vaccine that did not require a specific skin test. Yes, there were. But what if, we don't know if they got a blood draw or another test showing an allergy. We don't really. And even if they gave some exceptions, they didn't give one to Mr. Pastrana, and they never said there could be. What I was about to say is if, in fact, they were giving exemptions to other people who had adverse indications, and, in fact, they just denied it to Mr. Pastrana, it seems like that would just be arbitrary. You know, like you can't be inconsistent about it. But I don't read this video as saying that they would be allowed to do that. I read this video as saying that they, in fact, didn't have a requirement of allergy testing. They're saying that for the first time on appeal. Below, their briefing admits they had that inflexible policy and, in fact, that he was ineligible for accommodation because he failed to produce that test. But what do you think is the state of the, what's your position on the facts? So there is this affidavit. Do you contest those facts, or do you acknowledge that there were other people who got exemptions without requiring the allergy test? Without knowing whether they had to take a blood test or any other facts about their case, I think it's just one of many facts. You said before that the city had not argued before the district court that they didn't have this policy. They instead said that Mr. Pastrana broke off the accommodation dialogue, right? By failing to give them the proof of the test, that he failed their one requirement, so he was ineligible. Oh, you're saying that was the argument, that they weren't eligible because of that. So I was going to ask this question. You know, I mean, I guess we'll hear from the city. But, you know, if in fact, you know, when an employer is making an accommodation, there is a dialogue between the employee and the employer as to whether there's going to be an accommodation. And the employer says you're required to do this. The employee says I can't do that, right? And it's only when the employer makes clear that there's going to be no accommodation granted that we say that there's discrimination. So even if the argument is that it's not about whether they had the policy, but the argument is, well, somebody said he needed a skin test, that he went to the doctor, and he said he couldn't get the skin test, at least at that time. But then he didn't go back and say, well, somebody told me I need a skin test, but it turns out that I can't get this required skin test. You should accommodate me by giving me more time or letting me document the allergy in a different way. But he didn't do that. Does that make a difference? Your Honor, I think the fact that this is a constitutional claim is important. What the government is doing in this case is usurping medical decision making from their employees. Under Jacobson, they say that the state has a police power to usurp that what should really be a fundamental right under Cruzan and other, you know, right to refuse medicine cases. However, they say the state can impose that condition. But there is a floor. And that is when you usurp that kind of decision making from your employee, you cannot subject them to a medical requirement that you know will harm or kill them. They did know this. And switching, doing this bait and switch, and saying very clearly to a hardworking firefighter who is used to following orders. Now, wait. How did they subject him to that? I mean, even assuming the most they did was said if you don't, you'll be on leave without pay. And the district court, I think, incorrectly said if you're made to lose your job, that's too much. But leave without pay, that's a, you know, Jacobson gives an awful lot of power to the state. Your Honor, they did, the leave without pay, what's not really in the record, because this wasn't the issue below, really. But they were then terminated if they weren't vaccinated within the period. So they were first placed on leave without pay and then terminated. They lost their pensions. He wasn't terminated. He was terminated because he got horrifically injured. Well, he wasn't terminated. He was put on a disability pension. Right. But he did not, he complied is the whole point. He's not coming here saying I chose to exercise my medical rights and thus I was disciplined by my job. He did what they asked of him. So the question is, is what they were asking of him constitutional? I'd like to pose this question. If what they were asking of him was, say, everyone on the force has to be Catholic, would we say the penalty is losing your job for not being Catholic? So you could have opted out of that by simply quitting or not complying. What do we do with We the Patriots in the cases that say a vaccine is not treatment for the purposes of the fundamental right to refuse medical treatment? Well, I didn't read that in We the Patriots, but it wasn't about a medical accommodation. Jacobson, very clear. The cases that are part and parcel of that are, we have this line of cases that say a vaccine is not a treatment for purposes of the fundamental right to refuse treatment. Well, respectfully, to the extent We the Patriots does say that, and I didn't know that it does, the Cruzan case directly answers that. So the Supreme Court was faced with the same question about lifesaving or life-sustaining, you know, water and hydration and nutrition, and that same argument was made. This isn't treatment. This is just, you know, a preemptive thing to save this person's life. And they said the distinction is irrelevant. It's the intrusion into the body. Well, We the Patriots, you know, takes for granted that people who are medically unable to take the vaccine or will have an adverse reaction are not required to take it. So to the extent that it's going to be an act, like it's life-threatening for him, it would be different considerations than are in We the Patriots, right? Right, Your Honor. I don't really read the city as saying that even taking for granted that it's life-threatening for him, we would be entitled to make it impossible for him to take the vaccine without losing his job. I read them to say that they didn't actually do that, right? They say that the reason why it's not constant shocking that he didn't get the exemption is because he didn't request the exemption. They said the reason why the city had a rational basis for its policy because the city didn't actually have a policy of making it impossible for him to get an exemption, right? So it doesn't hinge on whether that's right. There was enough evidence to show that he actually did make it impossible for him to do it. He actually did make the request. Well, I think this entire colloquy shows why that new argument at best simply means we need a trial on these issues. There are substantial factual disputes here about whether there was a policy, whether he asked, whether they knew he couldn't get the allergy test. There are a lot of questions of fact that the city is now raising. And I would also add that it is very telling that they switched to this argument on appeal when they never made it below. And the reason is because it does shock the conscience. It does shock the conscience that the BHS doctors repeatedly told Pastrana he was per se ineligible for accommodation unless he could produce that allergy test. And that was the only basis that they would allow accommodation. And, you know, we can prove at trial that that is true. They told that to other firefighters, too. They had a policy that didn't look at whether someone was in danger of harm, but rather only whether they fit that narrow criteria that they had determined was the only reason that they would grant accommodation. Mr. Pastrana had a clear cut contraindication under the CDC's guidelines. Everybody admits now that he never should have been forced to take the second dose. I would turn the Court to, for example, the medical report. I'll have that in the brief. Yes. You're in time for rebuttal, so why don't we hear from you again, but let's hear from the City first. Thank you, Your Honor. Ms. McCanfield. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the Court. Amy McCanfield on behalf of the City of New York. Your Honors, this Court should affirm the grant of summary judgment here. And at the outset, Your Honors, plaintiff cannot succeed under Monell because plaintiff the constitutional violations that plaintiff is alleging occurred. They're not connected to an underlying City policy. What plaintiff is relying on to establish a policy is a single conversation that Pastrana had with a single front-line FDNY doctor. That's his affidavit at page 304 of the record. He says one doctor told him he needed this skin test. That's not enough to show him a reasonable claim. Am I right the way I describe the arguments you're making? I mean, I read your brief to say that it's not conscience-shocking to deny an exemption because he didn't request an exemption. Exactly. And it's not irrational for the City to have this policy because the City, in fact, did not have a policy of making it impossible, right? Exactly. But you're not arguing that even if he made a request and it was life-threatening for him, that you would be entitled to make it impossible for him to obtain an exemption, right? I don't think anyone would want to deny that request if it truly was life-threatening. But that's not the facts here. He never submitted a request for an accommodation. So I get that, but didn't the district court not resolve the case? All right. Go ahead, Judge Calabresi. Did you make that argument below? Did you argue before the district court that he didn't request? Yes, Your Honor. If you look at the affidavit from the FDNY representative where the representative states in uncontroverted testimony both that the City granted multiple requests for exemptions that did not require an allergen-specific skin test, and that his office, which reviewed the request for exemptions, never received an application from Prostrana. So it was not irrational, nor did it shock the conscience, that the FDNY did not consider him. So, you know, as we just heard from Ms. Gibson, that the affidavit, which she says was not really a subject of debate during the district court proceedings, says there were requests for an exemption from the order that were component of the vaccine that did not require a specific skin test. But, you know, maybe they required a nonspecific skin test or one of some particular kinds of skin tests. I mean, is this, do we know, you know, that there were, can we tell from the record that there were medical exemptions granted that didn't require any skin tests? Well, we know from the affidavit that it wasn't a categorical bar. And, again, we know that the doctor told him to get it, and he did not continue that dialogue with the FDNY. And I know that my adversary is arguing that there's a disputed question of fact as to whether FDNY knew that he couldn't get this specific allergy test. There's not. In his own affidavit, he says his allergist told him on November 22nd that he couldn't get the skin test, and then he went on November 23rd, the next day, and got the second dose. That's page 305, 306 of the record. What my adversary is referring to with respect to the FDNY notes, that comes from a visit on November 26th. That was after he got the second dose. I'm sorry? He had already gotten the second dose. Exactly, Your Honor. So only after he got the second dose did he go back and tell FDNY, hey, my allergist said I couldn't get the skin test in the first place. He never told them that before he got the allergy test. And, in fact, there's only two visits with FDNY doctors before he got the second dose. One was after he got the first dose when he was diagnosed with a reaction to COVID-19 vaccine. He had chills and sweats, and the doctor said, you should be fine to return to work in a few days. And then weeks later. What's striking about these arguments is it seems like both sides agree that if, in fact, it was clear to the city that he had suffered an adverse reaction and that he couldn't get an allergy test, that it wouldn't be allowed to just make it impossible for him to get an exemption. And I think I heard Ms. Gibson say that if, in fact, the city didn't know that he needed an exemption, it would not be liable. But you seem to be arguing over what the underlying facts were. Doesn't that mean that we still have disputed questions of fact in this case? No, Your Honor, because, again, the record is very clear about when he saw FDNY, what he told them, and what they told them. But it's true that the district court didn't rely on that, right? The district court did say basically the city could just require vaccines for anybody based on any reason, right? And it's not a big deal if he has to leave his job. The district court found that this was a rational policy and upheld it on that basis. And I would also point this Court to two recent decisions from this Court. I think you said a moment ago you would agree that you said the record shows that you granted some medical exemptions, even without requiring an allergy test, right?  So if that's the undisputed record, if you did that for some people and you just didn't do it for him, even though he documented adverse reactions, that would be arbitrary, right? Well, in a different record, perhaps. But that's not the record here because the reason why you think it's not arbitrary here is just because you didn't do that to him, right? There was no request at all. There was nothing submitted to FDNY asking for an exemption. Is your argument that he should have known when he got told that he couldn't have an allergy test, he should have known that there was a chance that the city would then exempt him? He had to ask. And he didn't go. Your Honor, he would have to ask for an exemption and have it denied for him to show that it was conscious shocking for the city to deny his request or that it was irrational for the city to deny his request. And he didn't even ask. And I think two cases from this Court are very instructive, the Zucker case from 2022 and the Franklin Union Free School District case from 2024. Both of those dealt with, as applied, substantive due process challenges. In Zucker, it was for a vaccination requirement. In Franklin Square, it was a mask requirement. And in both of those cases, the plaintiff submitted doctor's recommendations that they be exempt from those requirements. And in both of those cases, this Court found that that was not enough to state a viable substantive due process violation when those medical request exemptions were denied. So here the — Those were like blanket requirements, right? You're not saying that you had a blanket requirement that said it's just too important to be vaccinated, you just can't be a firefighter if you're not vaccinated. They, in fact, did allow medical exemptions. Exactly. Just like in Zucker and in Franklin Union Free School District, there were medical exemptions in those cases that were granted in some instances. And this Court, again, found that the denial of the request in those cases did not shock the conscience, nor was it irrational. And here, the facts — the plaintiff didn't even submit a request for an exemption, unlike in those cases where the plaintiff submitted requests for exemptions that were backed by doctor's recommendations. So it certainly does not come close to the high — So what's the significance of not submitting the request? So I think we just heard from Ms. Gibson that, you know, the doctors work for the city and maybe because they work for the city, they had a duty to make sure he wouldn't get the second vaccine and not to feel pressure that he would get the second vaccine. You know, maybe that's a dispute you have. Maybe she's wrong about that, but that seems like it's a question that hasn't been answered. No, Your Honor. So two points in that regard. So, again, the standard review needs to be kept in mind here. Again, it's either shocks the conscience, which Zucker applied, or rational basis review, which Franklin Square applied. And in either of those cases, it was not irrational, nor did it shock the conscience for the FDNY not to construe his conversations with the doctors as a request. This was a new vaccination requirement implemented during a global pandemic, and it was reasonable for FDNY only to consider requests through proper channels. Nor was it irrational, nor did it shock the conscience for the FDNY doctors not to advise him to receive the second dose. In fact, the medical records show that his own treating allergist at the time told him that it was safe to receive a second dose of the vaccine. And I'd like to get back to the point I was making earlier about there's only two visits with FDNY doctors before he got the second dose. One was right after he got the first dose when he had the mild reaction, and then the second one was weeks later, November 15th, I believe, in which he was suffering from allergy symptoms at that November 16th, page 363 of the record. He was suffering from allergy symptoms at that time, but the FDNY records did not characterize them as anaphylaxis, and they did not connect it to the COVID vaccine he got weeks earlier. So there was no basis for the FDNY doctors, again, to advise him not to get the second dose when his own treating allergist was there. But that is a fact question that this report did not resolve, whether the allergic reaction was related to the vaccine or was some other cause, right? Well, what matters— On the motion for summary judgment, we're making inferences in his favor, right? But what matters for the substance-induced process claim, and under Jacobson and under We the Patriots, there needs to be reasonable certainty that that second dose was going to cause him severe harm and the FDNY needed to know that at the time. But when we make inferences in his favor, and the allegation is that it was an allergic reaction to the vaccine and it was such a severe reaction, wouldn't that give you reasonable certainty that the second dose was going to prompt a similar reaction? Again, Your Honor, not on this record, where there was nothing before the FDNY at that time to connect the two, and his own treating allergist told him it was safe to get the second dose. So this doesn't come close to, again, the facts in the previous cases that I referenced, which the plaintiffs had even medical recommendations on their side. So what are these arguments? And, like, maybe you're right about them, but aren't these arguments that the district court did not resolve? Well, Your Honor, again, I think the record is clear. I think, as Your Honor stated, there's a lot of agreement on the facts here, and under the controlling case— Well, actually, I was saying there's agreement on the law. I'm not sure about the facts, right? There seems to be agreement on the law that the city could not arbitrarily deny him a medical exemption when it gave medical exemptions to other people without requiring the skin test. And—but it could deny him the exemption if he never made a request, and the city didn't even know he made a request, and the dispute just seems to be about whether that's, in fact, what happened. I would say that there's no genuine dispute of material facts here, and summary judgment was properly granted to the city. And the city's—in your 56—rule 56 statement of material facts, the city says the EEO office—first it establishes how you make a request for accommodations through the EEO office, and that's admitted, and then the city says the EEO office did not receive or review a request from Pastrana. Pastrana says denied, but then promptly says he lacks personal knowledge, which is not a basis for denial. So is— I'm sorry, I don't— Okay. I don't quite follow. I apologize. The city says you have to go through the EEO. Pastrana admits. The city then says the EEO did not receive or review a request from Pastrana for an exemption. In response to that, Mr. Pastrana's 56A response says denied, but you're looking at me like you don't think that's right. I'm looking at it. I promise you he said denied. But then the next sentence in that response is plaintiff lacks personal knowledge as to whether the EEO ever received or reviewed his request. So ordinarily, unless the party opposing summary judgment can point—they can't say denied because it feels like that didn't happen or denied because I don't believe that. You have to have evidence. So I'm trying—I read this as an undisputed fact, and I'm not sure if when you're saying there are no disputed material facts, are you asserting that this is an undisputed fact or do you believe that fact is disputed? I also read it as an undisputed fact that the EEO office did not receive an application for exemption from Pastrana. The reason I was a little befuddled by your question is because— If that is an undisputed fact, then the only question is whether the city had a duty to tell him that he didn't need that affirmatively before, that he didn't need to make a special request if the allergy wasn't there. And where has that argument really been made? Well, the city made clear to all of its FDNY employees that in order to be granted a request, you had to apply for one. And there were instructions that were provided. Thousands of employees in the FDNY did apply. Over 100 were granted. And Pastrana never availed himself of that opportunity. And even if, as he alleges, and we can't dispute a summary judgment, a single doctor told him wrong information about the allergy—the process for getting an exemption, that doesn't constitute a substitute process violation, much less a substitute due process violation against the city for municipal liability. If there's some clarification, if you need some clarification about how to apply for the medical exemption, why isn't it completely reasonable to ask the treating doctor who works for the fire department? I mean, why wouldn't that be? You know, the city, when they established the policy of having medical exemptions, they would understand that employees are going to see clarification from the treating doctors that work for the city. And, Zucker, Your Honor, this Court made clear that even if a medical exemption was denied in a way that was contrary to State law, it still wouldn't rise to the level of a substitute due process violation unless there's some showing of animus or something more than that. Again, it's a very high standard for an as-applied substitute due process violation. And here, it's against the city, so you need to show an underlying municipal policy. So for all these reasons, again— Well, you could show, you know, a failure to train or that kind of thing, right? So maybe if the policy doesn't make clear what kind of documentation you need and the understanding would be that the employee would ask the doctors for clarification, you know, the city is liable for not making clear, like you don't need any kind of particular test. Or you could provide documentation apart from an allergy skin test. The cases that Hashana has cited for this kind of failure to train theory, they deal with, I think, department-wide failings in a city agency. It's not an instance where you have a single mistake from a single front-line worker. That's just not enough to meet the bar for a substitute due process violation. So, yes, this Court can affirm. Thank you. Okay. Thank you very much, Ms. McIntosh. We'll hear back from Ms. Gibson on Ravel. So my question to you is, are you arguing that the city should have told him when they said you need to get an allergy test, that if you can't get an allergy test, you will be exempt? Is that your argument? Sir, I just want to observe the clock is not counting down. Thanks. All right. Go ahead. I am, Your Honor, saying that the city had a duty to provide him with information. If they did, in fact, have an exemption process that did not require the allergy test, they had to tell him, here is the process to apply. Nowhere in the record did anyone tell him this. The prior process expired on October 27th. Pastrana's need arose afterwards. And when he asked for accommodation, he was never given it. But importantly, this isn't some errant doctor, and I think that part of the record needs to be clarified. In the statement of material facts submitted by the defendants at paragraph eight, they admit that the medical exemption applications were reviewed by the FDNYBHS. But you're taking that in the backwards order. I think what they're admitting is that when the EEO received an exemption request, they checked with the doctors about it. What your argument is, is that your client told the doctors, and therefore, that quote moves upstream to the EEO, right? Right. But he didn't just tell the doctors. I mean, his own boss had to send him in an ambulance to the ER to get treatment for severe anaphylaxis, which is in his records. But there's no dispute, right, that he was aware that the way to do this was to file a report with the EEO or a request with the EEO, right? There is absolutely a dispute about that. Where is that dispute? Nowhere in the record does it show that Pastrana was informed that if he wanted to apply for accommodation, he had a process he had to follow post-October 27th. He was told instead by his boss, who sent him to the ambulance, and by the BHS, who had been placed in charge of monitoring his anaphylactic reaction and ensuring he could continue to work, he was told by both of them that if he wanted an accommodation – well, the doctor is the only one who said, if you want an accommodation, this is how you do it. And that was, you have to give me an allergy test that shows. I'm looking at paragraph 6 of the 56A, which says the information that the fact, the vaccine mandate fact provided this information that said an employee seeking a reasonable accommodation from vaccination should apply to their EEO office. Yes, and it says by October 27th. So you're saying the official policy said here's how you get out of the vaccination requirement in general, and the deadline is October 27th, and it doesn't explain what happens if you get the first dose and have an adverse reaction. So, you know, your position would be the city didn't have an official policy under those circumstances. Well, also, Your Honor, this comes – Is that right? Is that the position? As far as – So an employee, even if an employee knew that in order to apply for a vaccination exemption at the outset, you know, they would have to submit the email to the EEO office, but it does not explain what happens if you have an adverse reaction after that date in the course of the vaccination. Yes, Your Honor, and because this was never raised below, we never thought to put this in the record, but I've represented hundreds of these workers. If you tried to apply after the date, you had to do so through this online portal, and it was closed after October 27th. These processes were very – It's an online portal. I thought it gives an email address. Is that not right? Well, that might have been DOE. A235 has an email address. An email address. Well, what I do know is that people were – Whatever you're saying, you might have put into the record evidence that they weren't really looking for emails after the initial deadline of getting an exemption. Right, or asked further about the process. And I will also say thousands of people – this isn't a situation where they had to be so rigid. Thousands of people, and the rigidity of – Well, they didn't have to be so rigid, maybe, but it wouldn't be a constitutional violation if the city had said up front, look, we can't deal with all sorts of informal requests to different employees. You must submit some document to the email address. Otherwise, we won't treat you as having made a request. If they had made that clear, and he didn't submit the email, wouldn't you have to say that he doesn't have a claim? And a laxative. Possible – And a laxative. Stop. And a laxative.   Stop. Sorry, Your Honors. Possibly, but under the accommodation statutes, both federal and state, the onus is on the employer to accommodate known disabilities, not on the employee to use magic words. I'm sorry, but I can't get over the fact that the very next day, just a couple of days after being told he couldn't have an allergy test, he went and had the thing done. You know, there was, on his side, almost nothing. He didn't wait. He didn't do. He didn't ask. I mean, it's very dramatic that he went and got the second dose, knowing what the first dose had done. And in that circumstance, that keeps bothering me. Well, what, Your Honor, is more disturbing? That a firefighter trained to follow orders is told he can't get an exemption without this test, and then he gets the test? Or is it more disturbing that the city knew he had severe anaphylaxis and was at risk of severe harm with a contraindication that is a textbook contraindication, and they told him – they never said, oh, go see if you can get the test and then come back to us. They never said, you can apply through these channels and we'll see if we can give you an exception from that policy. They said there's only one way to get it, and that is to get this test. And if you don't get that test, you need to follow orders. Otherwise, you are in dereliction of your duty. He did what was asked of him. He didn't not do that. Just to clarify, you know, what's before us, the district court did not address the argument about whether the city, in fact, had the requirement of an allergy test and whether it would be permissible if they did and if he – or if he actually made a request, right? The district court just said there's no – even if they did that, they are allowed to put him to the choice of employment or submitting a test to get an exemption, right? The district court – So even if you – even if it might be the case that the city could eventually show that they didn't have the policy, you're saying the district court hasn't resolved that yet? Well, the district court operated on the city's assertions and admissions, which were that they did have that policy. And the district court found that policy – that is, the decision of the district court was that that policy is constitutional because the city has a rational need to limit accommodations. And if they want to only limit it to those who have an allergy test, even if someone is still at severe risk of harm or death, that's okay. And I am – I am here to argue that Jacobson doesn't say that's okay. And even Zucker and Franklin, which, frankly, are vulnerable after the Court's recent decision in Mahmoud, which says that you can't condition – because they didn't find it was constitutional. What they found was that it was constitutional – that your constitutional rights were not infringed if you could homeschool or avoid the condition in some other way. Mahmoud has now called that argument insulting and legally unsound. So it's unclear whether that's going to be upheld in the future for schools' children. But for employees, there's no question. You can't condition public employment on waiver of your right to an adequate medical exemption. And an adequate medical exemption doesn't fall entirely on the shoulders of a firefighter trained to follow orders. It is also – the onus is also on the BHS, which was the decision-maker over medical exemption policy, and on the City, which admitted it had this inflexible policy that was – it was only a matter of time until someone like Pastrana took the second dose, suffered severe heart failure, and now can do nothing. He is living in his car, and he has nothing. And the entire burden of the City's public policy falls on him. Meanwhile, a thousand firefighters never even had to get vaccinated, worked throughout the pandemic because the City hadn't even bothered to look at their applications. This rigorous imposition on the one person doing his job, doing what they asked of him, and just trying to protect other people, he deserves protection. Okay. Thank you. Thank you very much, Ms. Gibson. The case is submitted. Thank you.